UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANITA BRUMLEY,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>COMISSIONER OF SOCIAL SECURITY,<br><br>　　　　Defendant. | Case No.: 1:11-cv-00253 - LJO - JLT<br><br>FINDINGS AND RECOMMENDATIONS DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, DIRECTING REMAND PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g) AND DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF ANITA BRUMLEY<br><br>(Doc. 18) |

Anita Brumley ("Plaintiff") asserts she is entitled to disability insurance benefits under Title II of the Social Security Act. Plaintiff argues the administrative law judge ("ALJ") erred in evaluating the evidence of record. Therefore, Plaintiff seeks review of the administrative decision denying her claim for benefits. For the reasons set forth below, the Court recommends Defendant's motion for summary judgment (Doc. 18) be **DENIED** and the matter be **REMANDED** for further proceedings.

**PROCEDURAL HISTORY**[1]

Plaintiff filed an application for supplemental security income on June 25, 2007, alleging disability beginning September 1, 2003. AR at 105-10. The Social Security Administration denied her claim initially and upon reconsideration. *Id.* at 64-67, 71-75. After requesting a hearing, Plaintiff

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1

testified before an ALJ on September 2, 2009. *Id.* at 19-49. The ALJ determined Plaintiff was not disabled, and issued an order denying benefits on January 8, 2010. *Id.* at 12-18. Plaintiff requested review of the ALJ's decision by the Appeals Council of Social Security, which was denied on December 14, 2010. *Id.* at 1-4. Therefore, the ALJ's determination became the decision of the Commissioner of Social Security ("Commissioner").

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938). The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for benefits under Title II of the Social Security Act, Plaintiff must establish she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).  The burden of proof is on a claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).  When a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment.  *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## DETERMINATION OF DISABILITY

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability.  20 C.F.R. §§ 404.1520 (a)-(f).  The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level.  *Id.*  In making these determinations, the ALJ must consider objective medical evidence and opinion (hearing) testimony.  20 C.F.R. §§ 404.1527, 404.1529.

**A.   Relevant Medical Evidence**

Dr. Rosalinda Serrano examined Plaintiff on October 2, 2007, as a qualified medical examiner.  AR at 167, 172.  During the evaluation, Dr. Serrano observed that Plaintiff's gait was "slow and guarded" and she had a slight limp.  *Id.* at 170.  Dr. Serrano observed that Plaintiff sat rigidly and had discomfort when she sat or walked.  *Id*.  Dr. Serrano noted Plaintiff was extremely sensitive to the touch.  *Id*.  Dr. Serrano diagnosed Plaintiff with the following impairments: sprain/strain cervical, thoracic, lumbar spine; fibromyalgia by history; and history of hypertension.  *Id.* at 172.  Furthermore, Dr. Serrano opined Plaintiff could stand and walk for two hours of an eight-hour workday and could sit less than six hours in an eight-hour work day.  *Id*.  While Dr. Serrano determined Plaintiff had limitations in manipulation and reaching bilaterally, there were no restrictions noted on handling, feeling, grasping, or fingering bilaterally.  *Id*.  According to Dr. Serrano, Plaintiff could lift ten pounds frequently and occasionally, but could not bend, stoop, crouch, crawl, or kneel.  *Id*.  In work settings, Dr. Serrano opined that Plaintiff could not walk up and down stairs, climb ladders, operate machinery, or drive a fork lift.  *Id*.

1    Dr. George W. Bugg reviewed Plaintiff's medical records and completed a physical residual
2 functional capacity assessment on November 1, 2007.  AR at 173-179.  Dr. Bugg determined Plaintiff
3 had the ability to: frequently lift and carry twenty-five pounds and occasionally fifty pounds; stand or
4 walk for six hours in an eight-hour day; and sit for six hours in an eight-hour day.  *Id.* at 174.  Dr.
5 Bugg determined no further limitations.  *Id.* at 174-76.  According to Dr. Bugg, Plaintiff was partially
6 credible, but there were inconsistencies between the medical reports and Plaintiff's allegations.  *Id.* at
7 179.  Dr. Bugg concluded that Plaintiff had a medium residual function capacity.  *Id.*

8    Dr. Mohamed O. Nawar reviewed Plaintiff's medical records and the assessment completed by
9 Dr. Bugg on February 21, 2008.  AR at 187-88.  Dr. Nawar considered the evaluation performed by
10 Dr. Serrano and a December 2007 report from Plaintiff's treating physician.  *Id.* at 187.  Dr. Nawar
11 affirmed Dr. Bugg's evaluation that Plaintiff had a full medium residual function capacity.  *Id.*

12 **B.    Hearing Testimony**

13    *Plaintiff's Testimony*

14    Plaintiff testified before an ALJ on September 2, 2009.  AR at 22.  Plaintiff reported she
15 reached tenth grade and she did not receive her GED.  *Id.* at 22-23.  She stated that she spent thirty-
16 one years doing "cannery work."  *Id.* at 24.  Plaintiff asserted she became disabled on September 1,
17 2003 at which point she retired.  *Id.* at 39.  Plaintiff explained the medical problems that kept her from
18 working are fibromyalgia as well as back problems including sciatica pain.  *Id.* at 25-26.  Plaintiff
19 explained that the back problems resulted from an injury she received while at work.  *Id.*  According to
20 Plaintiff, she had to stop working because it hurt her legs and arms.  *Id.* at 24-25.  Plaintiff indicated
21 she could not walk up and down the stairs anymore and standing on cement floors at work bothered
22 her too much.  *Id.*  Also, Plaintiff reported that she attempted to clean houses as a form of employment
23 five years ago, but had to stop after two weeks because the "pain bothered her too much."  *Id.* at 24.

24    Plaintiff explained that as a result of the fibromyalgia she felt constant pain all over her body.
25 AR at 26.  Plaintiff described the pain as "horrible" and that it felt as though her muscles tighten.  *Id.*
26 Plaintiff asserted that the pain would rise to such a point that she dropped anything she was holding.
27 *Id.*  Plaintiff also asserted that there were "tender points" all over her body.  *Id.*  Plaintiff explained
28 that at times the tenderness became so bad that she was unable to touch her hair or fingertips without

4

"horrible" pain. *Id.* at 36. Plaintiff claimed that due to the fibromyalgia she got headaches, could not sleep, and felt tired. *Id.* at 37. Plaintiff reported that her treating physician, Dr. Endress, explained to her that the fatigue was a symptom of the fibromyalgia. *Id.* at 38. Furthermore, Plaintiff explained that sometimes her mind goes blank and she could not focus, which she attributed to "fibro fog." *Id.* Plaintiff explained she lost focus several times per day and others around her took notice. *Id.* at 39.

Plaintiff testified that her sciatica pain bothered her twice a year and that it took at least two months to get it "back in place" with visits to the chiropractor. AR at 28. Plaintiff explained that if she turns her body the wrong way or bent to pick something up without bending her knees, her sciatica got "knock[ed]" of place. *Id.* at 27. Plaintiff stated that in addition to visiting her chiropractor, she took medication in order to treat both the back pain and the fibromyalgia. *Id.* at 30. Plaintiff testified medication eased the pain but did not relieve it altogether. *Id.* at 42. In addition, Plaintiff explained that the medication made her drowsy. *Id*.

Plaintiff testified that she only drove once a month, to her doctor's office or the grocery store, because her hands hurt while holding the steering wheel and it bothered her legs. AR at 23-24. Plaintiff explained that she could not stand on full time. *Id.* at 25. Plaintiff stated that in an eight hour day, she lay down for about four hours because her legs gave out. *Id*. In the remaining time, Plaintiff asserted that she spent two-and-a-half hours on her feet and an hour-and-a-half sitting. *Id.* at 30. Also, Plaintiff explained that she was unable to sit in a chair for more than ten to fifteen minutes at a time, at which point she needed to stand for about ten minutes before attempting to sit again. *Id.* at 29. Plaintiff estimated that she could lift and carry up to ten pounds. *Id*. Plaintiff testified that she could walk about 100 feet before having to stop. *Id.* at 30.

Plaintiff asserted that she was able to grasp an item in her hand for about ten minutes before her muscles tightened and she dropped the object. *Id.* at 31. Plaintiff further reported that it would take about ten minutes of rest before she was able to grasp an object again. *Id*. Plaintiff believed she could probably grasp something in her hands, while taking breaks, for four hours a day. *Id*. Plaintiff explained that she could only write about three checks at a time, the time equivalent of fifteen minutes, before having to rest her hands. *Id.* at 33. Further, Plaintiff believed she could probably reach forward for four hours a day with breaks. *Id.* at 32.

5

Plaintiff explained that her normal day consisted of taking her medicine and trying to clean at least two rooms of her house a day. AR at 33. Plaintiff stated it took her three-and-a-half to four hours to clean per day, of which she spent half the time taking breaks. *Id.* at 34. Plaintiff asserted that there were some days that she was not able to clean. *Id*. Plaintiff stated that she made dinner using the stove about three nights a week, but only for ten to fifteen minutes at a time. *Id.* 34-35. Finally, Plaintiff explained that she was no longer able dance or make crafts, due to the pain. *Id.* at 35.

*Vocational Expert Testimony*

Vocational expert ("VE") Judith Najarian testified after Plaintiff. The VE characterized Plaintiff's past work at the cannery, under the DOT, as four separate classifications. AR at 43. The first was as a standard "cannery worker" which was classified as light and unskilled. *Id*. The second was "cleaner, industrial" includes cleaning machines, washing belts, floors, and walls. *Id*. This was classified as medium and unskilled. *Id*. The third classification was as a "production helper, cannery" which includes lifting large bins of fruit and dumping them into bins. *Id*. This was medium and unskilled. *Id*. The final classification was that of a "scale clerk," which was classified as light and slightly skilled work. *Id.* at 44.

The ALJ first asked the VE to consider a hypothetical individual with the past relevant work history as mentioned above. AR at 45. The hypothetical individual was fifty-seven years of age and had a tenth grade education, had a combination of severe impairments, but could lift fifty pounds occasionally and twenty-five pounds frequently and could stand and walk and sit for six hours. *Id*. The VE opined that such a person could perform all of Plaintiff's past work. *Id*.

Next, the ALJ asked the VE to consider another hypothetical individual with same past relevant work and severe impairments as above, but this time the individual can "lift and carry ten pounds maximum, walk one hundred feet, stand two-and-a-half hours total, and sit one-and-a-half hours total." AR at 45. Furthermore, this individual "would experience occasional lapses of concentration," would not be able to grasp or grip for longer than four hours, and would have to lay down four hours per day. *Id.* at 46. The VE concluded that this hypothetical individual could not perform any of Plaintiff's past relevant work, nor could this individual perform any job within the national economy. *Id*.

1          Plaintiff's counsel posed his first question to the VE considering a hypothetical individual who
2  could not be on their feet for more than two hours a day, could sit six hours a day, and could reach
3  bilaterally for only half the day. *Id*. The VE opined that this individual could not perform any of the
4  previously stated past jobs. *Id.* at 47. The VE stated that according to the <u>Occupational Voc</u>
5  <u>Quarterly</u>, in California there were a total of four jobs that this hypothetical individual could perform.
6  *Id*. Plaintiff's counsel then reduced the hypothetical individual's hand manipulation and grasping
7  abilities to occasional. *Id*. The VE concluded, that this individual could only perform one job in the
8  DOT, that of Surveillance Monitor. *Id*.
9          Plaintiff's counsel requested that the VE clarify whether reaching is required in the past
10 relevant work classification labeled "light". *Id.* at 48. The VE answered in the affirmative and also
11 provided that there is occasional bending or stooping involved under the "light" classification. *Id*.

12 **C.    The ALJ's Findings**

13         Pursuant to the five-step process, the ALJ determined Plaintiff met the insured status
14 requirements of the Social Security Act on December 31, 2008. AR at 14. Furthermore, the ALJ
15 determined that Plaintiff did not engage in substantial gainful activity for the period beginning with
16 her alleged onset, September 1, 2003 and her date of last insured. *Id*. Second, the ALJ found that
17 Plaintiff has the following severe impairments: "fibromyalgia and hypertension." *Id*. The ALJ
18 concluded that at the date last insured, Plaintiff's impairments did not meet or medically equal one of
19 the listed impairments. *Id*. In addition, the ALJ determined that the Plaintiff had the residual
20 functional capacity ("RFC") to perform medium exertion work. *Id*. Therefore, the ALJ determined
21 through the date last insured, Plaintiff was "capable of performing past relevant work as a cannery
22 worker, industrial cleaner, production helper (cannery industry), and scale clerk." *Id.* at 17. The ALJ
23 found that Plaintiff was not disabled as defined in the Social Security Act from the date of alleged
24 onset to the date of last insured. *Id*.

25                          **DISCUSSION AND ANALYSIS**

26         Plaintiff asserts the ALJ erred in his evaluation of the Plaintiff's testimony and the medical
27 evidence. (Doc. 15 at 3). Plaintiff argues that the ALJ found she suffered from medically
28 determinable impairments that could reasonably cause the alleged symptoms. *Id.* at 6. On this basis,

7

Plaintiff claims that the question to be determined only was the extent to which Plaintiff was limited. *Id.* Plaintiff alleges the ALJ failed to provide clear and convincing reasons for rejecting her testimony about the extent and intensity of these limitations. *Id.*

On the other hand, Defendant argues, "the ALJ provided valid reasons, supported by substantial evidence, for rejecting Plaintiff's subjective account of her symptoms." (Doc. 18 at 8). In addition, Defendant asserts that the ALJ considered Plaintiff's daily activities. *Id.* at 12. Defendant concludes that substantial evidence supports the ALJ's credibility finding. *Id.* at 13.

A. The ALJ failed to set forth clear and convincing reasons for rejecting Plaintiff's testimony of excess pain.[2]

In assessing credibility, an ALJ must determine first whether objective medical evidence shows an underlying impairment that "could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citation omitted). Where the objective medical evidence shows an underlying impairment, and there is no affirmative evidence of a claimant's malingering, an "adverse credibility finding must be based on clear and convincing reasons." *Id.* at 1036; *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008). Here, the ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." AR at 15. However, the ALJ believed Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with the . . . residual functional capacity assessment." *Id.* Consequently, the ALJ was required to set forth clear and convincing reasons for rejecting Plaintiff's testimony regarding her pain.

Importantly, in 1984, Congress amended the statutes governing disability to address allegations of pain. *See Bunnell v. Sullivan*, 947 F.2d 341, 347 (9th Cir. 1991); 42 U.S.C. § 423(d)(5)(A). With the amendment, "Congress clearly meant that so long as the pain is *associated* with a clinically

---

[2] Excess pain is defined as "pain that is unsupported by objective medical findings." *Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986).

demonstrated impairment, credible pain testimony should contribute to a determination of disability."

*Howard v. Heckler*, 782 F.2d 1484, 1488 n.4 (9th Cir. 1986). The Ninth Circuit observed,

> [D]espite our inability to measure and describe it, pain can have real and severe debilitating effects; it is, without a doubt, capable of entirely precluding a claimant from working. Because pain is a subjective phenomenon, moreover, it is possible to suffer disabling pain even where the *degree* of pain, as opposed to the mere *existence* of pain, is unsupported by objective medical findings.

*Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). Therefore, an ALJ may not base an adverse credibility determination solely upon the medical evidence. *Id.; see also Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence"); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (the "lack of medical evidence cannot form the sole basis for discounting pain testimony"). Here, the ALJ considered Plaintiff's daily activities and objective medical evidence, which are relevant factors in a credibility determination. *See Rollins*, 261 F.3d at 857 (medical evidence "is a factor that the ALJ can consider in his credibility determination); *Fair*, 885 F.2d at 603 ("testimony about the claimant's daily activities" may be relied upon to find a pain allegation incredible).

*Activities of daily living*

When a claimant spends a substantial part of the day "engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations." *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999), citing *Fair*, 885 F.2d at 603. For example, a claimant's ability to cook, clean, do laundry and manage finances is sufficient to support an adverse finding find of credibility. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008); *see also Burch*, 400 F.3d at 680 (the claimant's activities "suggest she is quite functional. She is able to care for her own personal needs, cook, clean and shop. She interacts with her nephew and boyfriend. She is able to manage her own finances…"). Likewise, an ALJ may conclude "the severity of . . . limitations were exaggerated" when a claimant exercises, gardens, and participates in community activities. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009). However, an ALJ must make a specific finding relating to the transferability of the activities to a work place to refute a

Plaintiff's allegations of disability. *Orn v Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

The ALJ noted Plaintiff "cooks, cleans, drives to medical appointments and [the] grocery store, watches television[,] and reads the Bible." AR at 15. However, the ALJ failed to establish Plaintiff's limited activities could be transferred to a work setting, or point to evidence that Plaintiff spent a "substantial" part of her day engaged in such activities. *See Orn*, 495 F.3d at 639 (the ALJ erred in failing to "meet the threshold for transferable work skills, the second ground for using daily activities in credibility determinations"); *Lewis v. Apfel*, 236 F.3d 503, 517 (9th Cir. 2001) (limited activities did not constitute convincing evidence that the claimant could function regularly in a work setting). The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). Moreover, the Ninth Circuit opined, "Daily household chores and grocery shopping are not activities that are easily transferable to a work environment." *Blau v. Astrue*, 263 Fed. App'x 635, 637 (9th Cir. 2008). Consequently, Plaintiff's activities of daily living were not a clear and convincing reason to discount her testimony of excess pain.

*Objective medical evidence*

Generally, "conflicts between a [claimant's] testimony of subjective complaints and the objective medical evidence in the record" can constitute "specific and substantial reasons that undermine . . . credibility." *Morgan v. Comm'r of the Soc. Sec. Admin*, 169 F.3d 595, 600 (9th Cir. 1999). However, in citing to the medical evidence as part of a credibility determination, it is insufficient for the ALJ to make a general statement that the testimony is contradicted by the record. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("general findings are an insufficient basis to support an adverse credibility determination"). Rather, the ALJ "must state which pain testimony is not credible and what evidence suggests the claimants are not credible." *Dodrill*, 12 F.3d at 918; *see also Holohan*, 246 F.3d at 1208 ("the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony"). Plaintiff testified that she experienced constant pain throughout her body, had tender points throughout her body, got headaches, could not sleep, and had difficulty focusing. *See* AR at 23-24, 26, 37-38. Furthermore, Plaintiff

testified she needed to lay down four hours a day, could not sit for more than ten to fifteen minutes at a time, could lift and carry a maximum of ten pounds, and could walk a hundred feet. *See* AR at 25, 29-30. The ALJ noted that Plaintiff testified that she suffered constant pain in her entire body, did not feel rested after sleeping, had trouble focusing, could sit for ten minutes, could lift ten pounds, could walk a hundred feet, and needed to lay down four hours of the day. *Id.* at 15. Although the ALJ concluded that the Plaintiff's testimony was inconsistent with the above residual functional capacity assessment, the ALJ failed to specify which portions of Plaintiff's testimony were not credible and failed to identify the specific medical evidence refuting such testimony. The ALJ's assertion that Plaintiff's alleged limitations were not consistent with the opinion of a qualified opinion is not enough to support an adverse credibility determination.

Furthermore, even if the Court were to find the ALJ met his obligation to specifically identify the medical evidence that refutes Plaintiff's subjective complaints, the medical record alone is not a clear and convincing reason to reject Plaintiff's testimony. In making the adverse credibility determination, the ALJ was required to set forth clear and convincing reasons supported by substantial evidence in the record to reject Plaintiff's testimony. However, the ALJ failed to do so.

B.      Remand is appropriate in this matter.

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). In addition, an award of benefits is directed where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed. *Varney v. Sec'y of Heath & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir.

1988). Also, the Ninth Circuit explained that "where the ALJ improperly rejects the claimant's testimony regarding [her] limitations, and the claimant would be disabled if her testimony were credited," the testimony could be credited as true, and remand is not appropriate. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996); *Smolen*, 80 F.3d at 1292.

However, courts retain flexibility in crediting testimony as true. *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (remanding for further determinations where there were insufficient findings as to whether the plaintiff's testimony should be credited as true). A remand for further proceedings regarding the credibility of a claimant is an appropriate remedy. *See, e.g., Bunnell*, 947 F.2d at 348 (affirming the district court's order remanding for further proceedings where the ALJ failed to explain with sufficient specificity the basis for rejecting the claimant's testimony); *Byrnes v. Shalala*, 60 F.3d 639, 642 (9th Cir. 1995) (remanding the case "for further proceedings evaluating the credibility of [the claimant's] subjective complaints . . ."). Notably, the ALJ failed to properly reject Plaintiff's testimony by not identifying the specific portions of Plaintiff's subjective pain testimony he did not find credible. Furthermore, the ALJ's vague references to the medical record alone are not enough to refute Plaintiff's subjective complaints. Therefore, the Court will recommend the matter be remanded for the ALJ to provide sufficient findings related to the credibility of the subjective pain testimony of the Plaintiff.

### FINDINGS AND RECOMMENDATIONS

For all these reasons, the Court concludes the ALJ erred in assessing Plaintiff's credibility as related to her subjective complaints of excess pain. Therefore, the Court will recommend the matter remanded for the ALJ to provide sufficient findings related to the medical evidence of the record, and to determine whether Plaintiff's limitations preclude her from past relevant work, as she performed it or as it is generally performed in the national economy.

Based upon the foregoing, **IT IS HEREBY RECOMMENDED**:

1. Defendant's motion for summary judgment (Doc. 18) be **DENIED**;
2. The matter be **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision; and

3.     The Clerk of Court be **DIRECTED** to enter judgment in favor of Plaintiff Anita Brumley and against Defendant, Commissioner of Social Security.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within fourteen (14) days after being served with these Findings and Recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **June 20, 2012**                            **/s/ Jennifer L. Thurston**
                                                                    UNITED STATES MAGISTRATE JUDGE